# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| CAYTRANS BBC, LLC, | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )    CIVIL ACTION 08-0691-WS-B |
| | ) |
| EQUIPMENT RENTAL AND | ) |
| CONTRACTORS CORP., | ) |
|     Defendant/Counterclaimant/ | ) |
|     Third-Party Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| CAYTRANS BBC, LLC, | ) |
|     Counterclaim Defendant, | ) |
| | ) |
| and TRI-STATE MARITIME SERVICES, | ) |
|     Third-Party Defendant. | ) |

## ORDER

This matter comes before the Court on legal memoranda (docs. 92, 95) filed by plaintiff C.V. Scheepvaartonderneming Aramis ("C.V.S. Aramis") and defendants Caytrans BBC, LLC ("Caytrans") and BBC Chartering & Logistic GmbH & Co. KG ("BBC Chartering"). These memoranda address the question of whether the stay of arbitrable claims in this case should be expanded to encompass nonarbitrable claims, as well. That issue is now ripe for disposition.

**I.    Relevant Background.**

On August 23, 2008, an accident occurred during the loading of cargo on board the M/V BBC ARAMIS at the Alabama State Docks in Mobile, Alabama. In particular, a crane laden with cargo collapsed, as a result of which both cargo and crane boom struck and damaged the vessel. The crane itself was also damaged. From this incident has emerged a tangle of crisscrossing claims, as nearly every entity involved in or affected by the accident has sued (and has been sued by) every other such entity in these consolidated proceedings. Litigants include C.V.S. Aramis (the owner of the vessel), BBC Chartering (which had entered into a time charter in October 2004 to lease the vessel from C.V.S. Aramis), Caytrans (which had sub-leased the

vessel from BBC Chartering via time charter in June 2008), Equipment Rental and Contractors Corp. (which furnished the crane utilized in the cargo-loading process), and Tri-State Maritime Services, Inc. (which provided stevedoring services during the cargo-loading process).

On April 16, 2010, the undersigned entered an Order (doc. 86) finding, *inter alia*, that all of C.V.S. Aramis's claims against BBC Chartering were subject to a mandatory arbitration provision in the October 2004 time charter, and that all of C.V.S. Aramis's claims against Caytrans were subject to a mandatory arbitration provision in the June 2008 time charter. On that basis, the April 16 Order stayed C.V.S. Aramis's claims against Caytrans and BBC Chartering pending arbitration. As for the many remaining nonarbitrable claims, the April 16 Order recognized that this Court has discretion to stay them, as well. *See, e.g., Klay v. All Defendants*, 389 F.3d 1191, 1204 (11th Cir. 2004) ("When confronted with litigants advancing both arbitrable and nonarbitrable claims, however, courts have discretion to stay nonarbitrable claims."). In light of that authority, all parties were ordered "to file memoranda of law setting forth their positions as to whether the Court should exercise its discretion to stay some or all of the nonarbitrable claims in this action, pending the outcome of the arbitral proceedings." (Doc. 86, at 14.) In response, C.V.S. Aramis filed a memorandum arguing that the nonarbitrable claims should be stayed, while Caytrans and BBC Chartering filed a memorandum championing the opposite result.[1]

## II. Analysis.

As noted, it is well established in this Circuit that, in cases where both arbitrable and nonarbitrable claims are present, district courts have discretion to stay the latter pending arbitration of the former. That said, "courts generally refuse to stay proceedings of nonarbitrable claims when it is feasible to proceed with the litigation." *Klay*, 389 F.3d at 1204; *see also Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 225, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985) (White, J., concurring) (where lawsuit involves both arbitrable and nonarbitrable claims, "the heavy presumption should be that the arbitration and the lawsuit will each proceed in its normal course"); *Axa Equitable Life Ins. Co. v. Infinity Financial Group, LLC*, 608 F. Supp.2d 1330,

---

[1] No other parties elected to respond to the briefing directive set forth in the April 16 Order. Accordingly, Equipment Rental and Tri-State have waived their opportunity to be heard on this scope-of-stay issue.

1332 (S.D. Fla. 2009) (declining to stay nonarbitrable claims where "it is entirely feasible to proceed with parallel litigation against the insured and trust defendants while arbitration is pending with respect to the broker defendants" and "it would be inefficient to stay the outcome of the non-arbitrable rescission claims pending arbitration of the claims against the brokers"). "Crucial to this determination is whether arbitrable claims predominate or whether the outcome of the nonarbitrable claims will depend upon the arbitrator's decision." *Klay*, 389 F.3d at 1204.[2]

In applying the *Klay* standard, C.V.S. Aramis and Caytrans / BBC Chartering reach markedly divergent conclusions. C.V.S. Aramis asserts that "[n]umerous issues that the arbitrators will decide … pre-dominate all parties' claims, would be duplicative, and could result in inconsistent rulings." (Doc. 95, at 4.) By contrast, Caytrans and BBC Chartering insist that the various nonarbitrable claims (including those involving Equipment Rental and Tri-State) are not dependent on the outcome of arbitration, but that the reverse is true, at least as a practical matter. According to Caytrans and BBC Chartering, "there is no benefit to staying the nonarbitrable claims," and proceeding with the nonarbitrable claims "will likely resolve the arbitrable claims, and obviate the need for additional and expensive litigation." (Doc. 92, at 5.)

---

[2] *See also Chelsea Family Pharmacy, PLLC v. Medco Health Solutions, Inc.*, 567 F.3d 1191, 1200 (10th Cir. 2009) ("Stay of the entire proceeding is appropriate when resolution of the arbitrable claim will have a preclusive effect on the nonarbitrable claim or when the arbitrable claims predominate the lawsuit and the nonarbitrable claims are of questionable merit.") (citation and internal quotation marks omitted); *Volkswagen of America, Inc. v. Sud's of Peoria, Inc.*, 474 F.3d 966, 972 (7th Cir. 2007) (pointing out that "district courts actually may prefer to stay the balance of the case in the hope that the arbitration might help resolve, or at least shed some light on, the issues remaining in federal court"); *Narragansett Elec. Co. v. Constellation Energy Commodities Group, Inc.*, 563 F. Supp.2d 325, 331 (D.R.I. 2008) (failure to stay entire proceeding may be error where partial stay risks inconsistent rulings because arbitration is likely to resolve issues material to lawsuit); *Neely v. Bechtel Corp.*, 2008 WL 2120085, *5 (M.D. Ala. May 20, 2008) (denying request to stay nonarbitrable claims where "plaintiff is not predominantly advancing arbitrable claims" and plaintiff's nonarbitrable claims "do not depend upon the outcome of" the others); *Petrik v. Reliant Pharmaceuticals, Inc.*, 2007 WL 3283170, *3 (M.D. Fla. Nov. 5, 2007) (staying entire case where Swiss arbitrators were better equipped than court to interpret license agreement under Swiss law, and where arbitration ruling might lead to conclusion that nonarbitrable claims "would necessarily fail"); *International Fidelity Ins. Co. v. BMC Contractors, Inc.*, 2007 WL 128813, *3 (M.D. Ga. Jan. 12, 2007) (refusing to stay nonarbitrable claims because arbitration "will not result in duplicative proceedings and will not permit a decision in either proceeding to have preclusive effect in the other" inasmuch as the claims were separate and distinct).

After careful review, the Court is of the opinion that Caytrans and BBC Chartering have the better argument. Of paramount importance to this determination is the relationship between the arbitrable and nonarbitrable claims. The matters that have been referred to arbitration include C.V.S. Aramis's claims against the vessel's time charterers, Caytrans and BBC Chartering, wherein C.V.S. Aramis alleges, in part, the following: (a) BBC Chartering and Caytrans signed contracts promising to pay for "any and all damages to the Vessel caused solely by the stevedores" and for "damages done to the vessel caused by stevedores or other Charterers' servants," then breached those promises by failing to pay C.V.S. Aramis for the damage to the vessel; and (b) BBC Chartering and Caytrans negligently hired Equipment Rental and Tri-State, negligently failed to supervise loading operations, and engaged in "other acts of negligence" that caused damage to the vessel. (Doc. 74, at 5-7.) By contrast, the claims that have not been referred to arbitration include, among others, the following: (a) Caytrans' claims that Equipment Rental negligently operated or maintained the crane, or failed to supply a proper crane or competent crew; (b) Caytrans' claims that Tri-State failed to provide reasonably safe cargo-loading services and failed to exercise ordinary care and diligence in loading the cargo; (c) C.V.S. Aramis's claims that Equipment Rental and Tri-State caused the accident by their negligence, breach of warranties of workmanlike performance, and so on; (d) Equipment Rental's claims that Caytrans' own negligence and its failure to provide assistance in the vessel-loading process proximately caused the crane accident; (e) Equipment Rental's claims that C.V.S. Aramis negligently caused the crane accident by improperly directing the loading of cargo, failing to turn over the vessel in a reasonably safe condition, and failing to warn of hazards; and (f) Equipment Rental and Tri-State's claims against each other on various theories, including indemnity and contribution.

Without a doubt, the nonarbitrable claims hinge to a large degree on the question of whose acts or omissions caused the crane accident that damaged the M/V BBC ARAMIS. It is not at all clear to the Court, however, that the arbitrators will necessarily provide a definitive answer to that question. To the contrary, it is probable that the arbitration proceedings will focus not on who was at fault in the accident, but on the relevant contractual provisions in the time charters and whether those contracts obligate Caytrans and/or BBC Chartering to reimburse

C.V.S. Aramis for damage to the vessel, irrespective of who caused that damage.[3] C.V.S. Aramis's position that arbitrable issues predominate apparently follows from an assumption that the arbitrators must decide which party or parties caused the accident; however, C.V.S. Aramis fails to explain why that assumption is warranted. Far from the arbitrators necessarily answering the question of who bears fault for the accident, as C.V.S. Aramis contends, it appears unlikely that they will do so, based on the particulars of the claims that have been referred to arbitration. In fact, given the nature of the arbitrable claims (and the primacy in those claims of C.V.S. Aramis's contract-based theory of liability against Caytrans and BBC Chartering), the Court is hard-pressed to foresee a likely scenario in which the arbitrators would make an absolute determination of which party or parties caused the accident and to what degree, apportioning fault between or among them. Simply put, it appears most likely that arbitration will resolve only questions of contract-based liability for Caytrans and BBC Chartering, leaving unanswered the critical issues joined in the nonarbitrable claims of whether Equipment Rental, Tri-State, a combination of both, neither, or some third party is at fault for the accident, and if so the degree of each culpable party's fault. Therefore, the central issue joined by the nonarbitrable claims (*i.e.*, who caused the accident) would likely remain in play for judicial resolution regardless of the outcome of arbitration.[4]

More fundamentally, Caytrans and BBC Chartering make the compelling point that the nonarbitrable claims may prove to be the tail that wags the dog in this case. As they put it, "a resolution to the claims against Equipment Rental and Tri-State will likely render moot the Plaintiff's claims, and the arbitration proceeding will no longer be necessary." (Doc. 92, at 4.) The reasoning appears to be that, if the nonarbitrable claims culminate in a determination that

---

[3] Caytrans and BBC Chartering emphasize this point in their memorandum, where they explain that "Caytrans and BBC Chartering's alleged liability is based on a contract provision contained in the Time Charter," rather than their alleged tortious acts or omissions at the time of the accident. (Doc. 92, at 4.)

[4] The point that nonarbitrable claims would not be fully decided by the arbitration is reinforced by C.V.S. Aramis's frank (and correct) admission that the arbitrators would not have occasion to consider various issues joined in this litigation, such as (a) Equipment Rental's alleged damages for harm to its crane and the loss of use of said crane, (b) Caytrans' claims for loss of use of the vessel, (c) Equipment Rental's claim on open account, and (d) contractual indemnity claims asserted by and between various litigants. (Doc. 95, at 5-6.)

Equipment Rental and/or Tri-State is liable (*i.e.*, a finding that the accident was caused by negligence or, alternatively, a breach of duties of workmanlike performance, on the part of one or both of them), then C.V.S. Aramis might be made whole by that judgment (after any appropriate modifications to allow for contribution and/or indemnity) without having to move forward as to the arbitrable claims for derivative contractual liability against Caytrans and BBC Chartering.[5] The essential point is this: There is at least a reasonable possibility that on-the-ground, direct responsibility for this accident lies with Equipment Rental and/or Tri-State, and that the liability of Caytrans or BBC Chartering is confined to an indirect, contract-based, pass-through theory that only comes into play if C.V.S. Aramis cannot recover from Equipment Rental or Tri-State.[6] If the nonarbitrable claims (including principally those involving Equipment Rental and Tri-State) proceed to conclusion in this District Court, that result may obviate the need to go forward with arbitral proceedings as to plaintiff's claims against Caytrans and BBC Chartering.[7]

Finally, it bears noting that, from a timing standpoint, the nonarbitrable claims are ready for trial now. It appears highly unlikely that arbitration (which was ordered on April 16, 2010) will or could occur before a trial of the nonarbitrable claims; therefore, the net effect of staying the nonarbitrable claims would be to delay the resolution of all claims joined in this litigation. Stated differently, it is likely that trial of the nonarbitrable claims can and will be completed will before any arbitration hearing happens as to the arbitrable claims. Thus, it would be far more

---

[5] Of course, implicit in this notion is an assumption that Equipment Rental and Tri-State have assets to pay any such judgment that may be entered against them, leaving no outstanding deficiencies that C.V.S. Aramis must collect from Caytrans or BBC Chartering via derivative, contract-based liability in order to be made whole.

[6] This view appears to be shared by C.V.S. Aramis itself, given that C.V.S. Aramis sued Equipment Rental and Tri-State more than three months before it asserted claims against Caytrans and BBC Chartering.

[7] To be clear, the Court is expressing no opinions and making no findings at this time as to the ultimate liability of any party or the merit of any party's claims or defenses in this action, whether arbitrable or nonarbitrable. Rather, the foregoing is intended to demonstrate the substantial likelihood that the nonarbitrable claims may predominate over the arbitrable claims in this action, and to show that the fate of the arbitrable claims may depend on what happens at trial on the nonarbitrable claims.

efficient to try the nonarbitrable claims now than to stay the entire action indefinitely pending the conclusion of what are, at best, nascent arbitration proceedings as to the arbitrable claims. Based on the outcome of trial on the nonarbitrable claims, the arbitrating parties will be well equipped to make an appropriate assessment of whether they need to carry on with arbitration or not.

**III. Conclusion.**

For all of the foregoing reasons, the undersigned finds that it is feasible to proceed with litigation of the nonarbitrable claims, notwithstanding the court-ordered stay of the arbitrable claims. On this record, the Court cannot find that the arbitrable claims predominate over the nonarbitrable claims. If anything, the converse may be true, and it is a virtual certainty that critical legal and factual issues will remain outstanding for resolution in this litigation regardless of the arbitrators' decisions. Accordingly, the Court will not disturb the "heavy presumption" recognized by Justice White that the arbitration and the lawsuit will each proceed in its normal course, but will instead exercise its discretion to decline to stay the nonarbitrable claims.

Based on this determination it is **ordered** as follows:

1. C.V.S. Aramis's request for a stay of this action in its entirety is **denied**. The nonarbitrable claims will proceed on their present litigation track, with the final pretrial conference set for July 1, 2010 at 10:30 a.m. (doc. 83) and trial to follow during the August 2010 civil term.

2. Per the Order (doc. 86) entered on April 16, 2010, all of C.V.S. Aramis's claims against Caytrans and BBC Chartering are **stayed** pending arbitration. Because this Court retains jurisdiction to confirm or vacate the resulting arbitration award, *see TranSouth Financial Corp. v. Bell*, 149 F.3d 1292, 1297 (11th Cir. 1998), and because of the potential nexus between arbitrable and nonarbitrable claims in this action, Caytrans and BBC Chartering (as movants and catalysts for the arbitration proceedings) are **ordered** to file, on or before the **third Tuesday of every month**, beginning in **June 2010**, a consolidated written report reflecting the status of their respective arbitration proceedings against C.V.S. Aramis.

3. The Motion for Partial Summary Judgment (doc. 87) filed by Tri-State is now ripe and has been taken under submission.

DONE and ORDERED this 4th day of June, 2010.

                                              s/ WILLIAM H. STEELE
                                              CHIEF UNITED STATES DISTRICT JUDGE